IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

PARKERSBURG DIVISION

CAMDEN-CLARK MEMORIAL
HOSPITAL CORPORATION,

Plaintiff,

v.                                                    CIVIL ACTION NO.  6:06-cv-01013

ST. PAUL FIRE AND MARINE INSURANCE CO.,

Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the court are the defendant's motion for summary judgment [Docket 91],

cross-motion for summary judgment [Docket 100 (by way of response)], and motion to exceed page

limit [Docket 90].  Also pending are the plaintiff's motions for summary judgment [Dockets 92, 94,

and 97].  For the following reasons, the defendant's cross-motion for summary judgment [Docket

100] and motion to exceed page limit [Docket 90] are **GRANTED**.  The defendant's motion for

summary judgment [Docket 91] is **GRANTED in part** and **DENIED in part**.  The plaintiff's

motions [Dockets 94, 97] are **DENIED**.  The plaintiff's motion as to *Boggs IV* [Docket 92] is also

**DENIED** as premature, and the claims regarding *Boggs IV* are **DISMISSED without prejudice**.

I.      **Background**

        A.      **The *Boggs* Suits**

        In September 2001, Hilda Boggs was admitted to Camden-Clark Memorial Hospital

("Camden-Clark") for surgery related to a broken ankle.  Seven days later, she died.  On June 30,

2003, Bernard R. Boggs ("Boggs"), individually and as administrator of the Estate of Hilda Boggs,

filed a complaint in the Circuit Court of Wood County, West Virginia, asserting wrongful death and intentional tort claims. *See Bernard R. Boggs, as Administrator of the Estate of Hilda Boggs, deceased as personal representative of the statutory beneficiaries of the wrongful death claim herein asserted and in his own right v. Camden-Clark Mem. Hosp. Corp., United Anesthesia, Inc., and Manish I. Koyawala, M.D.*, Civ. Action No. 03-C-296 ("*Boggs II*").[1]   The complaint alleged that Camden-Clark, United Anesthesia, Inc., and Dr. Manish Koyawala breached the applicable standard of care, which resulted in Hilda Boggs's death. Specifically, Boggs alleged that the defendants over-sedated Hilda Boggs prior to administering anesthesia, inappropriately dosed hyperbolic lidocaine, and inadequately monitored her. Boggs also alleged negligent hiring, retention, and privileging; destruction or despoliation of evidence; falsification of medical records; fraudulent concealment; and fabricating or falsifying evidence on the part of Camden-Clark.

The resulting procedural history is quite convoluted but undisputed by the parties. On October 20, 2003, the state court dismissed *Boggs II* for failure to comply with certain pre-suit requirements. Boggs appealed the court's dismissal. While the appeal was pending with the West Virginia Supreme Court, Boggs filed a third state court lawsuit, Civil Action No. 03-C-623 ("*Boggs III*"), to protect the statute of limitations. On May 4, 2004, attorney for Camden-Clark, Richard Hayhurst, filed an answer and counterclaim to *Boggs III*. Seven months later, on December 8, 2004, the Supreme Court reversed the *Boggs II* dismissal, and Boggs filed an amended complaint in that action, which effectively mooted the *Boggs III* claim. Hayhurst filed another answer and

---

[1]Boggs filed four separate actions against the defendants in state court, but Civil Action No. 03-C-296 is the only action that proceeded to trial. The other actions are referred to in the filings as "*Boggs I*" and "*Boggs III*" and "*Boggs IV*." *Boggs I*, Civil Action No. 02-C-202, was dismissed for failure to achieve proper service of process. *Boggs III* and *Boggs IV* are explained further below.

counterclaim to the amended complaint in *Boggs II* on May 23, 2005. Both counterclaims filed by Hayhurst, which are substantively identical, alleged that Boggs's suits were frivolous and without merit. Although the counterclaims were eventually voluntarily dismissed without prejudice, Boggs nonetheless filed another action in state court on September 29, 2005, alleging that the counterclaims in *Boggs II* and *III* constituted malicious prosecution and/or abuse of process. That action is styled *Boggs v. Camden-Clark Memorial Hospital Corporation*, Civil Action No. 05-C-527 ("*Boggs IV*"). It remains pending in state court.

Dr. Koyawala and United Anesthesia settled out of court prior to the trial, agreeing to pay Boggs $2,000,000. *Boggs II* proceeded to trial on February 28, 2006, against Camden-Clark alone. Boggs presented evidence of medical negligence by Dr. Koyawala and Evelyn Melvin, a nurse anesthetist, and he also argued that the hospital instructed Camden-Clark employees to destroy Hilda Boggs's medical records, misled Hilda Boggs's family, directed witnesses to lie under oath, and otherwise falsified medical records and evidence. The totality of this conduct, Boggs argued, rose to the level of the tort of outrage.

On March 10, 2006, the jury returned a verdict that found and awarded the following: (1) that Camden-Clark fraudulently concealed information about Hilda Boggs's death from Boggs and awarded $100,000 in damages for fraudulent concealment; (2) that Camden-Clark's conduct toward Boggs was so outrageous that a reasonable person could not have been expected to endure it, and awarded Boggs $250,000 for past emotional distress, and $125,000 for future emotional distress; (3) that Camden-Clark was negligent toward Hilda Boggs and that such negligence was a proximate cause of Hilda Boggs's death; (4) that Boggs and the statutory beneficiaries of the wrongful death claim were entitled to a total of $1,570,000 in damages; and (5) that the conduct of Camden-Clark

was so outrageous, wrongful, or intentional that punitive damages should be awarded against Camden-Clark in the amount of $3,000,000.[2]  The net judgment award entered against Camden-Clark was $4,834,380.[3]

On the tort of outrage award, the jury verdict form asked only the following question: "Do you find that Camden-Clark Memorial Hospital's conduct toward Ray Boggs was so outrageous that a reasonable person could not have been expected to endure it?"  The jury answered "Yes," and awarded Boggs $250,000 in past emotional distress and $125,000 in future emotional distress.

On the punitive damages award, the jury verdict form asked only the following questions: "Do you find that conduct of Camden-Clark Memorial Hospital separate and apart from any conduct of Dr. Koyawala or Evelyn Melvin was so outrageous, wrongful or intentional that punitive damages should be awarded?"  The jurors answered "Yes."  The form then asked "What amount of punitive damages do you award against Camden-Clark Memorial Hospital?"  The jurors answered "$3,000,000.00."[4]

### B.    The Insurance Policy

------

[2]  The jury also awarded $1,500,000 in punitive damages for negligence, based on the apparent agency of Dr. Koyawala, Evelyn Melvin, or United Anesthesia. In an April 28, 2006 order, the state court explained how it would apply the $2,000,000 settlement award from Dr. Koyawala and United Anesthesia to set off Camden-Clark's award.  The court first applied the settlement money toward this $1,500,000 punitive damages award.  The remaining $500,000 was applied to the compensatory damages and pre-judgment interest awarded to the beneficiaries of Hilda Boggs's estate. (*See* Journal Order and Judgment Entry [Docket 97-3].)

[3] This includes $1,570,000 awarded to the beneficiaries of the estate of Hilda Boggs, plus $289,380 in pre-judgment interest, minus $500,000 setoff from Dr. Koyawala and United Anesthesia settlement, plus $375,000 awarded to Boggs for Camden-Clark's outrageous conduct toward him, plus $100,000 to Boggs for fraudulent concealment, plus $3,000,000 in punitive damages awarded against Camden-Clark.

[4] The underlying verdict was appealed to the West Virginia Supreme Court of Appeals, but the appeal was rejected.

-4-

At the time of the actions giving rise to *Boggs II*, Camden-Clark was insured by the defendant in this case, St. Paul Fire and Marine Insurance Co. ("St. Paul"), under a Health Care Medical Professional Commercial General Liability Protection policy, bearing the policy number 566XM2102 (the "Policy"). The Policy's effective dates were July 1, 1999, to July 1, 2002. The Policy provides three separate types of coverage: basic coverage, excess coverage, and umbrella insurance.

The basic coverage provides $1,000,000 for "medical professional injury," "bodily injury and property damage," "personal injury liability," and "advertising injury." (Policy [Docket 96-2] at 1102-1104.) Under the "medical professional injury" provision, St. Paul agreed to cover "amounts any protected person is legally required to pay as damages for covered medical professional injury that results from health care professional services provided, or which should have been provided" by a protected person. (*Id.* at 1102.) The Policy does not contain an exclusion for punitive damages, but it does contain an exclusion for "bodily injury or property damage that's expected or intended by the protected person." (*Id.* at 1118.) The Policy also contains a $2,000,000 self-insured retention ("SIR").[5] The excess coverage provides the same coverage as the basic coverage, but with a $15,000,000 limit for damages incurred in excess of those covered by the basic coverage. It also provides excess insurance for automobile liability and employer's liability insurance. The umbrella insurance provides some instances of coverage where there is no underlying coverage and contains a $10,000 deductible.

---

[5]A self-insured retention is a dollar amount specified in an insurance policy that must be paid by the insured before the insurance policy will respond to a loss. It is, in effect, "a large deductible that is owed by the insured and which the insurer does not cover." *Exec. Risk Indemnity, Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F. Supp. 2d 694, 702 n.9 (S.D. W. Va. 2009).

On March 4, 2002, Camden-Clark notified St. Paul that the *Boggs* action was filed, and St. Paul opened a file on the case and assigned a case manager one month later. Based on an understanding that the verdict would likely not reach the SIR limit, however, St. Paul closed the file in early June 2002. But soon thereafter, St. Paul reopened the case file based on a June 20, 2002 letter from Camden-Clark's lawyer, Hayhurst, stating that he "could not guarantee that the excess liability layer would not be exposed." (Hayhurst Letter [Docket 97-8].) The case proceeded through the procedural permutations discussed above, and *Boggs II* survived as the main case for which Camden-Clark had a potential claim for coverage.

On December 27, 2005, two months before trial and over three years after St. Paul reopened the case file, Samuel McEwen, St. Paul's Director of Major Case Liability, sent a reservation of rights letter to Sherry Johnston, Camden-Clark's Director of Risk Management. (*See* McEwen Letter [Docket 97-2].) McEwen stated that St. Paul "will continue to monitor this matter [the *Boggs II* suit] subject to the reservation of rights set forth below." (*Id.* at 1.) St. Paul, through McEwen, reserved its right to deny indemnification "for any punitive damages which are awarded to the Plaintiff because of intentional acts by the named insured and/or which arise from non-covered damages such as spoliation of evidence." (*Id.* at 5-6.) Finally, the letter advised that St. Paul reserved its "rights to limit or deny coverage on the basis of any other grounds." (*Id.* at 6.)

After judgment was entered in *Boggs II*, St. Paul hired attorney Michael Farrell to perform an "interim coverage analysis" based on the insurance policies, the state court complaint, the jury instructions, the verdict form, and several other documents. Farrell sent his conclusions to Camden-Clark's counsel in a letter dated July 18, 2006. (*See* Farrell Letter [Docket 25-7].) Farrell opined that while "the death of Mrs. Boggs does qualify as a *medical professional injury*" as defined in the

Policy, "the Fraudulent Concealment verdict does not constitute a *medical professional injury, personal injury, advertising injury, bodily injury or property damage*," and, accordingly, St. Paul did not have a duty to indemnify Camden Clark regarding that cause of action. (*Id.* at 9.)

Farrell also stated that the verdict on the outrage claim was not covered by the Policy for the same reason – it did not fall within the scope of coverage. (*See id.*) Finally, Farrell concluded that based on the "Jury Instructions, Jury Verdict, Journal Order and Judgment Entry and related memoranda submitted by the parties," the $3,000,000 punitive damages award was based on Camden-Clark's conduct in destroying records, misleading Hilda Boggs's family, and covering up her cause of her death. (*Id.* at 11.) Because this conduct does not fall within medical professional injury, personal injury, advertising injury, or bodily injury or property damage, Farrell reasoned, it was not covered by the Policy, and St. Paul had no duty to indemnify Camden Clark for the punitive damages. (*Id.*)

In response to Farrell's letter, Anita Casey, counsel for Camden-Clark, sent a letter regarding coverage to Laura Toregas, St. Paul's new Director of Major Case Liability. (*See* Casey Letter [Docket 25-8].) Camden-Clark disagreed with Farrell's analysis. Casey stated that while it was unclear whether damages for fraudulent concealment and outrage would be covered or excluded under the Policy, "it is . . . well-settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured." (*Id.* at 4.) Casey also pointed out that "there is no exclusion in the policy for the payment of such [punitive] damages." Accordingly, she asserted, the $3,000,000 should be covered under the Policy. (*Id.*)

Casey further criticized Farrell's analysis because it was allegedly "not based upon any determination by the jury or ruling by the court but appears to be based upon self-serving arguments set forth in Plaintiff's Opposition to the Hospital's Proposed Judgment Order." (Casey Letter 6.) The letter concluded with a promise that if St. Paul failed to reconsider its coverage position, Camden-Clark was prepared to bring a declaratory judgment action against St. Paul and seek damages for "net economic loss caused by the delay in settlement, as well as an award for annoyance and inconvenience on the part of the hospital." (*Id.* (internal quotation marks omitted).)

**C.      The Federal Action**

Staying true to its word, Camden-Clark filed this action on December 1, 2006, seeking a declaration that St. Paul owes a duty to provide coverage to and indemnify Camden-Clark under the Policy "for all the allegations asserted and damages awarded against it in the underlying matter." (Compl. 8). The complaint also seeks attorney's fees and defense costs incurred in the litigation and defense of the underlying matter and in this action; damages for net economic loss caused by delay in settlement of the coverage issues under the Policy; damages for annoyance and inconvenience under *Hayseeds, Inc. v. State Farm Fire & Casualty*, 352 S.E.2d 73 (W. Va. 1986); attorney's fees and costs for the appeal of this matter to the West Virginia Supreme Court of Appeals; and any additional damages available for St. Paul's "bad faith in handling of this claim and its denial of coverage." (Compl. 8-9).

Camden-Clark moved for partial summary judgment on November 21, 2007 [Docket 21], arguing that St. Paul's denial of coverage for the award of punitive damages was erroneous under the Policy's basic or excess coverage. Because issues of state law governed the resolution of the

summary judgment motions, on February 20, 2008, the court certified two questions to the West

Virginia Supreme Court of Appeals.  The court explained,

> What is unclear, and requires certification to the West Virginia Supreme Court of
> Appeals, is [who has the burden of proving coverage] when an insurer monitors the
> case but has no duty to defend, and where a jury verdict is ambiguous.  At least one
> treatise states that although the burden to prove that a judgment is covered by a
> policy is usually on the insured, exceptions may exist "in those cases in which the
> circumstances surrounding the defense of the underlying action were such that the
> insurer was obligated to seek an allocated verdict or advise the insured of the need
> for one, but failed to fulfill that obligation." 1 Allan D. Windt, *Insurance Claims &
> Disputes* § 6:27 (4th ed. 2001).  Determining where the burden lies is especially
> vital if a court has no way to ascertain the jury's intent. In that situation, it will be
> impossible for the party bearing the burden of proof to meet its burden, and that party
> will lose the coverage dispute.

*Camden-Clark Mem. Hosp. Corp. v. St. Paul Marine & Fire Ins. Co.*, No. 6:06-cv-1013 at 9-10

(S.D. W. Va. Feb. 20, 2008) [Docket 50].  Accordingly, the court certified the following questions

to the state Supreme Court:

> A.  Under West Virginia law, when an insured is found liable for a tort, and
> the complaint indicates that the tort could be based on conduct that the insurance
> policy covers, on conduct that the insurance policy does not cover, or both, and when
> the jury verdict does not specify which conduct gave rise to the insured's liability,
> does the insured bear the burden of proving that the liability was based on covered
> conduct, or does the insurer bear the burden of proving that the liability was based
> on non-covered conduct?
>
> B.  Under West Virginia law, when a jury awards punitive damages against
> an insured, and the punitive damages could be based on a claim covered by the
> insurance policy, on a claim not covered by an insurance policy, or both, does the
> insured bear the burden of proving that the punitive damages were based on a
> covered claim, or does the insurer bear the burden of proving that the punitive
> damages were based on a non-covered claim?

*Id.* at 10.

The case was stayed until the West Virginia Supreme Court answered the certified questions.

On June 25, 2009, the court answered the questions as follows:

[A.] Where a policy of insurance does not impose a duty to defend upon the insurer and the insured has controlled the defense of the underlying claims, if a court determination regarding allocation of a jury verdict between the claims covered by the terms of the policy and the claims not covered by the terms of the policy is sought, *the insured has the burden of proof to establish proper allocation.*

[B.] In order to obtain indemnification under a policy of insurance which does not exclude punitive damages and under which there is no duty to defend, *an insured who has controlled the defense in a case* resulting in a punitive damage award and who seeks a court determination regarding allocation of the award *has the burden of proving that the claims on which the punitive damage award is based is covered by the terms of the policy.*

*Camden-Clark Mem. Hosp. Corp. v. St. Paul Fire & Marine Ins. Co.*, 682 S.E.2d 566, 577 (W. Va. 2009) (the "State Court Opinion") (emphasis added). The State Court Opinion also provided an exception to this general rule:

However, a different circumstance may exist where the policy does not impose a duty to defend but the insured, recognizing the potential for a verdict in excess of the SIR limits, *requests the liability insurer to participate in the defense.* In such a circumstance, if the insurer *affirmatively chooses not to participate in the defense*, it should not be permitted to complain that the jury verdict against the insured is not allocated between covered and non-covered claims because it was given the opinion of participating, including the attendant opportunity to request an allocated verdict and refused.

*Id.* at 576-77 (emphasis added) (the "Exception").

The stay was lifted on August 26, 2009, and the parties proceeded with discovery. The parties filed respective motions for summary judgment on March 30, 2010. They are now ripe for review.[6]

## II.    Standard of Review

---

[6]In this opinion, the court does not consider whether the state court properly used the $2,000,000 settlement award to set off Camden-Clark's damages, or whether the *Boggs II* jury award of damages was appropriate in general. The parties do not make these arguments to this court. Rather, we are asked to decide if the Policy covers the relevant damages awarded.

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

## III.    Discussion

There are three separate issues to be addressed in the parties' summary judgment motions: (1) in light of the State Court Opinion, who has the burden of proving that coverage exists or does not exist on all disputed claims under the terms of the Policy, (2) whether the Policy's umbrella insurance provides coverage for the disputed claims, and (3) whether the Policy covers potential damages in the *Boggs IV* state action. I will address each in turn.

### A.    Who Has the Burden to Prove Existence of Coverage, and is the Burden Met?

Some damages awarded against Camden-Clark are types of damages covered by the Policy; i.e., damages for wrongful death awarded to the beneficiaries of the estate and prejudgment interest.[7] By their motions, however, the parties dispute coverage on the following damages: $100,000

---

[7]By way of the plaintiff's response and defendant's reply [Dockets 103, 107], the parties dispute whether these damages, plus costs and interest, surpass the SIR limits of the Policy. The court declines to entertain these arguments here, however. This opinion will resolve the dispute on which damages are covered and will allow St. Paul to properly calculate the amounts (including post-judgment interest accrued), if any, that surpass the SIR limits.

awarded for fraudulent concealment; $375,000 awarded for outrageous conduct; and $3,000,000 awarded in punitive damages against Camden-Clark.

The party with the burden is charged with showing whether the damages awards arose from "medical professional injury that results from health care professional services" to Hilda Boggs (in which case the damages are covered under the Policy), or whether the damages fit the intentional act exclusion for "bodily injury or property damage that's expected or intended by" Camden-Clark (in which case they are not). (Policy at 1118.)[8] Because the jury verdict form did not ask for a verdict that is allocated based on negligent versus intentional conduct, however, the party with the burden will have no way of meeting it. The court now turns to a discussion of who shoulders this burden.

### 1.  Camden-Clark has the burden to prove existence of coverage.

It is undisputed that the Policy imposes no duty to defend upon St. Paul. (*See* Policy at 1104 ("[W]e have no duty to investigate or defend any claim or suit or perform other acts or services under this agreement, even if the amount of damages or claim expenses exceeds the self-insured retention that applies.").)[9] It is also clear that Camden-Clark controlled the defense in *Boggs II*. The parties disagree, however, on whether St. Paul fits the Exception. If so, then St. Paul has the burden to prove non-coverage. If not, Camden-Clark has the burden to prove coverage. Looking to the

---

[8]Even assuming that the intentional act exclusion does not apply here, Camden-Clark still has the burden of showing that the Policy covers the relevant damages. As explained below, it cannot show that the damages potentially based on intentional conduct by Camden-Clark are covered under the Policy.

[9]Likewise, under the excess coverage provisions, St. Paul has "no duty to defend any protected person against a claim or suit if [Camden-Clark's] Basic insurance, or any other insurance, has a duty to defend that protected person. However, we'll have the right to associate in the defense and control of any claim or suit that is reasonably likely to involve [St. Paul]." (Policy at 1141.)

language of the State Court Opinion, this issue boils down to two important questions:  whether Camden-Clark requested that St. Paul participate in its defense in *Boggs II*, and if so, whether St. Paul affirmatively chose not to participate.

The State Court Opinion is not in any way equivocal about the requirements for the Exception.  It is clear that if (1) the insured "requests the insurer to participate in the defense," *and* (2) the insurer "affirmatively chooses not to participate in the defense," then the insurer will carry the burden of proving non-coverage.  *Camden-Clark*, 682 S.E.2d at 576-77.   In this case, there is no evidence that Camden-Clark requested that St. Paul participate in the defense, and no evidence that St. Paul declined to participate after such a request.

First, Camden-Clark provides no evidence that it asked St. Paul to participate in the defense of *Boggs II*.  The following excerpt from Hayhurst's deposition, in fact, indicates that no such evidence exists:

> Mr. Colombo: [D]id Camden-Clark Memorial Hospital ask that St. Paul participate in the defense of the Boggs medical malpractice litigation . . . and did they participate?
>
> Mr. Hayhurst: Well, I can only answer that question by saying this.  The St. Paul was notified of the filing of the suits.  The St. Paul was given information that it requested, and additional information that either Camden-Clark and I – Or I thought they should have in order to maintain a reasonable evaluation of their exposure.  The St. Paul did make suggestions as to strategy, and did demand certain actions be taken.  The St. Paul precluded us from discussing settlement even within the self insured limits without their participation [and] knowledge[.]
>
> Now, did I ever write The St. Paul a letter saying, on behalf of the hospital, I hereby demand that you take an active role in the case? No, I never sent such a letter, and I'm unaware of anything that the hospital sent in that respect . . . .

(Hayhurst Dep. 80:5-8, 16-25; 81:1-8 [Docket 97-10]).  Camden-Clark argues that the level of involvement on the part of St. Paul was so significant that "there was no need to make a formal request for St. Paul to participate, because they were already participating in the defense of [*Boggs II*]." (*Id.* at 81:13-17.)  It cites several examples of this involvement.  (*See* Mem. Supp. Pl.'s Mot. Summ. J. Burden of Proof 5-13.)  None of this evidence, however, rises to the level of a "request" on the part of Camden-Clark.  The record shows that St. Paul did nothing more than closely monitor an insured's potential claim, while sometimes supplying advice and suggestions.

Furthermore, even if there were a request, there is absolutely no evidence of St. Paul's declination of it.  Camden-Clark asks this court to expand the State Court Opinion to cover a situation where an insured simply kept in very close contact with an excess insurer about a potential claim.  The court declines to do so.

Therefore, because St. Paul did not have a duty to defend under the Policy, and it does not meet the Exception, Camden-Clark has the burden of showing the existence of coverage.

### 2.   *Camden-Clark cannot meet its burden.*

Camden-Clark simply cannot show that the jury awarded punitive damages based on "medical professional injury that results from health care professional services provided." (Policy at 1102.)  As previously discussed, the verdict form does not allocate the damages award between medical negligence and intentional actions on the part of Camden-Clark.  Indeed, the trial record shows that Boggs's attorney argued that the hospital "fraudulently concealed the truth about what happened to Mrs. Boggs by telling nurses to destroy notes, by giving the Boggs family a record that didn't tell the true story about what happened, by hiding documents right up until the trial was going on in this case." (Regan Closing Argument at 5 [Docket 96-20].)  The attorney told the jury, "I think

this conduct is outrageous." (*Id.* at 17.) He further explained the following on the punitive damages issue:

> [I]f you find [the hospital] ha[s] fraudulently concealed these things from the family, that the evidence is, in fact, gone, that they have covered this up, that they joined in Dr. Koyawala's scheme to cook up a story to make this all better for them, to go away, then you will have to ask yourself whether or not you think that conduct is . . . "so outrageous, wrongful or intentional that punitive damages should be awarded."

(*Id.* at 37 (quoting from jury verdict form).)  In light of this argument, and the inability of any party to determine the jury's intent without an allocated jury verdict form, Camden-Clark cannot show that the damages are allocated for negligent conduct resulting in medical professional injury.  As such, it cannot show that the disputed damages are covered under the Policy.

For these reasons, Camden-Clark's motion for summary judgment on the burden of proof issue is **DENIED**, and St. Paul's motion, to the extent it relates to this issue, is **GRANTED**.

**B.    Does the Umbrella Insurance Provide Coverage?**

Camden-Clark also argues in a separate motion that, if damages arising from *Boggs II* are not covered by the basic provisions of the Policy, they are covered by the umbrella insurance aspect of the policy (hereinafter, the "Umbrella Policy").  A review of the plain language of the Umbrella Policy, however, shows that this argument is without merit.  As St. Paul points out, Camden-Clark "attempts to create a loophole where there simply is not one." (Def.'s Resp. Pl.'s Mot. Summ. J. Umbrella Policy 11.)  The pertinent portion of the Umbrella Policy provides the following:

> Coverage When Your Basic Insurance Doesn't Apply

> We'll pay amounts any protected person is legally required to pay as damages for injury or damage that:

>> *Is covered by this agreement*; and

>> Is not covered by your Basic Insurance.

-15-

> However, we'll only pay you those amounts that are excess of the deductible shown
> in the coverage summary of amounts payable by other insurance, whichever is
> greater.  We'll then pay the remaining damages up to the limit of coverage that
> applies under this agreement.

(Policy at 1140 (emphasis added).)  From the plain language of the Umbrella Policy, it is clear that

St. Paul will pay only for damages for injury "covered by this agreement."  Camden-Clark cannot

identify any provision in the Policy where St. Paul has agreed to cover the relevant damages arising

from *Boggs II*.  For this reason, Camden-Clark's motion for summary judgment on the Umbrella

Policy is **DENIED**.

By way of its response, St. Paul moves for summary judgment on the Umbrella Policy issue.

Because Camden-Clark submitted a thorough reply to St. Paul's response, the court will entertain

St. Paul's response as a motion for summary judgment on the Umbrella Policy issue.  For the

reasons above, the court **GRANTS** the motion in favor of St. Paul.[10]

### C.     Does the Policy Provide Coverage for *Boggs IV*?

Finally, Camden-Clark's third summary judgment motion stems from a case that was filed

separately but has been consolidated with the instant matter (originally styled as *Camden-Clark*

*Mem. Hosp. Corp. v. St. Paul Fire & Marine Ins. Co.*, Civil Action No. 6:08-cv-189 (S.D. W. Va.

Mar. 12, 2008)).  Camden-Clark's complaint in this action seeks, *inter alia*, a declaration that St.

Paul "owes a duty to provide coverage to and indemnify Camden-Clark under [the Policy]."  (6:08-

---

[10]The court observes that Camden-Clark attempted to bypass the Local Rules requirements
by filing three separate motions for summary judgment, one on each issue in the case, with a total
of around thirty-six pages in its supporting memoranda.  *See* Local R. Civ. P. 7.1 ("All motions . .
. shall be accompanied by a supporting memoranda of not more than 20 pages in length.").  Camden-
Clark filed neither a request for page extension, nor a request for leave to file three separate motions.
Rather than disregarding some or part of the motions, the court will entertain the motions, but will
show the same leniency in entertaining St. Paul's motion made by way of its response.

cv-189 Compl. 6). In its motion, Camden-Clark asks that the court hold "that any potential damages arising from the allegations of malicious prosecution in [state court] are covered damages under the [Policy]." (Pl.'s Mot. Summ. J. *Boggs IV* 1).

At this time, *Boggs IV* remains pending in the Circuit Court of Wood County, West Virginia. The court, therefore, must first determine whether this issue is ripe. "Whether an indemnification issue is ripe for adjudication depends on the facts and circumstances of the case under consideration." *A/S J. Ludwig Mowinckles Rederi v. Tidewater Constr. Corp.*, 559 F.2d 928, 932 (4th Cir. 1977). An "important factor" in determining if an indemnification issue is ripe is "whether resolution of the tendered issue is based upon events or determinations which may not occur as anticipated." *Id.* (citing Wright, Miller & Cooper, *Federal Practice and Procedure* § 3532 (1975)). In *Tidewater*, the Fourth Circuit held that the district court prematurely ruled on an indemnification issue where

> there has been neither a determination of liability nor a settlement in any of the [state or federal court] actions pending against [the parties]. We cannot tell at this time what the outcome of those actions will be. . . . The fact that [the parties] have already incurred some expenses in defending those actions does not make ripe their claims for indemnification against all potential liability and expenses.

*Id.* Indeed, "[a] declaration that A must indemnify B if X comes to pass has an advisory quality; and if the decision would not strictly be an advisory opinion (anathema under Article III) it could be a mistake, because it would consume judicial time in order to produce a decision that may turn out to be irrelevant." *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003). *See also Columbia Gas Co. v. Ga. & Fla. Railnet Inc.*, 542 F.3d 106, 111 (5th Cir. 2008) ("[I]n general an insurer's duty to indemnify cannot be determined until after the underlying suit has been

resolved.");[1] *Penn-Am. Ins. Co. v. Mapp*, 461 F. Supp. 2d 442, 458-59 (E.D. Va. 2006) (in declaratory judgment action, declining to rule on whether the insurer was required to indemnify the insured, and dismissing the proceeding from its active docket), *rev'd on other grounds, Penn-Am. Ins. Co. v. Mapp*, 521 F.3d 290 (4th Cir. 2008).

Because *Boggs IV* is still pending in state court, it would be premature to decide whether St. Paul owes a duty to provide coverage to and indemnify Camden-Clark for potential damages under the Policy. As such, the plaintiff's summary judgment motion (and the defendant's summary judgment motion, as it relates to this claim) is **DENIED** as premature and the declaratory action regarding *Boggs IV* is **DISMISSED without prejudice**.

IV.    **Conclusion**

For these reasons, the defendant's cross-motion for summary judgment motion and motion to exceed page limit [Dockets 90, 100 (by way of response)] are **GRANTED**. The defendant's summary judgment motion [Docket 91] is **GRANTED in part** and **DENIED in part**. It is **GRANTED** insofar as it relates to the burden of proof and Umbrella Policy arguments, and **DENIED** as premature on the *Boggs IV* issue. The plaintiff's motions on the Umbrella Policy and burden of proof [Dockets 94, 97] are **DENIED**. The plaintiff's motion as to *Boggs IV* [Docket 92] is **DENIED** as premature, and the claims regarding *Boggs IV* are **DISMISSED without prejudice**.

Another action that has been consolidated with this case alleges bad faith on the part of St. Paul, in violation of the West Virginia Unfair Trade Practices Act, based on its denial of coverage

---

[1]The Fifth Circuit listed exceptions to this general rule, such as when courts are determining duty to defend and duty to indemnify issues at the same time, and when the underlying policy does not provide for a duty to defend but "it is apparent before liability is resolved in the underlying case that the policy cannot cover the claim." *Columbia Gas Co.*, 542 F.3d at 111. These exceptions do not apply here.

for damages arising from *Boggs II* and potential damages arising from *Boggs IV*. *See Camden-Clark Mem. Hosp. Corp. v. St. Paul Fire & Marine Ins. Co.*, Civil Action No. 6:08-cv-4 (S.D. W. Va. Jan. 3, 2008). To the extent the complaint in this action alleges indemnification based on *Boggs IV*, it is also **DISMISSED without prejudice**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party. The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER:      June 7, 2010

Joseph R. Goodwin, Chief Judge

-19-